**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**TARSHON M. PHILLIPS**                                                         **PLAINTIFF**

**V.**                                             **CIVIL ACTION NO. 1:11cv00215-SAA**

**MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY**                            **DEFENDANT**

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Tarshon M. Phillips for supplemental security income (SSI) payments under Section Title XVI of the Social Security Act. Plaintiff protectively filed his application for SSI on August 12, 2008[1], alleging disability beginning on March 17, 2003.[2] Docket 8, p. 99- 105. Plaintiff's claim was denied initially and on reconsideration. Docket 52-62. He filed a request for hearing (Docket 8, p. 9) and was assisted by a non-attorney representative at the administrative hearing on February 10, 2010.[3] Docket 8, p. 27- 50. The Administrative Law Judge (ALJ) issued an unfavorable decision on March 12, 2010 (Docket 8, p. 13-22), and the Appeals Council denied plaintiff's

---

[1] The record also contains an application for disability insurance benefits (DIB). Docket 8, p. 106-109.

[2] Although the plaintiff's disability application for SSI lists a disability date of August 12, 2008 (Docket 8, p. 99), his onset date is March 17, 2003. Docket 8, p. 111, 128. The Commissioner argues that the relevant time frame is August 12, 2008, the date he filed his application, through March 12, 2012, date of ALJ's decision. Docket 13, p. 1.

[3] The transcript states that the administrative hearing occurred on March 4, 2011. Docket 8, p. 27, 29. However, the parties state (Docket 13, p. 2, Docket 11, p. 1) and the notices reflect (Docket 8, p. 76, 82, 91) that the hearing actually was held on February 10, 2010.

request for a review. Docket 8, p. 5- 7. Plaintiff filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on March 21, 1974 and was 35 years old on the date of the administrative hearing. Docket 8, p. 30. He completed the eleventh grade without the aid of special education classes. Docket 8, p. 30-31. The plaintiff claimed disability beginning March 17, 2003 due to cirrhosis, high blood pressure, swollen feet, shortness of breath, memory loss and fatigue (Docket 8, p. 33-39, 128). He has not engaged in substantial gainful activity.[4]

The ALJ determined that plaintiff's cirrhosis, obesity, and mild mental retardation constituted "severe" impairments but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 416.920(d), 416.925 & 416.926). Docket 8, p. 15- 18. He concluded that the plaintiff's liver disease did not meet Listing 5.05 and plaintiff's mental impairments did not meet Listing 12.05 because the medical evidence and the plaintiff's testimony did not demonstrate adaptive functioning deficits manifested before age 22, as required. Docket 8, p. 17. The ALJ found that Listing 12.05's "paragraph B" criteria were not satisfied because the plaintiff experienced only "moderate" restrictions in activities of daily living, moderate difficulties in social functioning and in

---

[4]The ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged onset date, March 17, 2003. Docket 8, p. 15. In the last fifteen years, the plaintiff testified that he mowed grass for approximately four months at $20 per day in 2001and worked for a short period of time at a flower shop for $150 per week but has not worked at all since August 2008. Docket 8, p. 33.

maintaining concentration, persistence or pace and no episodes of decompensation. He found plaintiff did not satisfy the "paragraph C" criteria because plaintiff did demonstrate that he had a valid verbal, performance, or full scale IQ of 60 through 70 with deficits which manifested before age 22.[5]  Docket 8, p. 18.

Considering the entire record, the ALJ concluded that the plaintiff retained the Residual Functional Capacity (RFC) to

> lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk a total of six hours of an eight hour workday; and sit a total of two hours of an eight-hour workday. The claimant is limited to jobs that do not demand attention to detail or complicated instructions or job tasks, but he may perform jobs with simple, routine, and repetitive tasks.  He should refrain from jobs that require work at a production rate pace.  The claimant can maintain attention and concentration for two hour periods at a time, adapt to changes in the workplace at a basic level if those changes are introduced gradually, accept supervision on the basic level, and respond appropriately with co-workers.

Docket 8, p. 18-19.  The ALJ found that the plaintiff's impairments "could reasonably be expected to cause the alleged symptoms" but his testimony of the "intensity, persistence, and limiting effects" of his symptoms was "not credible" because it is not supported by the objective medical evidence.  Docket 8, p. 19.

Based on testimony of a vocational expert [VE], the ALJ held that although the plaintiff has no past relevant work, his "severe" impairments do not prevent him from performing unskilled jobs at the light level of exertion, such as cafeteria attendant, clipper and bagger. Docket 8, p. 21.  Considering plaintiff's age, education, work experience and RFC, the ALJ concluded that the plaintiff could perform work that exists in significant numbers in the national economy, and he therefore was "not disabled" under the Social Security Act.  Docket 8, p. 22.

---

[5]Additionally, the ALJ considered the criteria of paragraphs A and D of Listing 12.05 but found that the requirements of each were not met.  Docket 8, p. 17-18.

The plaintiff claims that the ALJ erred in evaluating the severity of the plaintiff's mental disorder under Listing 12.05(C).

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[6] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[7] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[8] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[9] At step three, the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[10] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[11] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and

---

[6]*See* 20 C.F.R. § 416.920 (2010).

[7]*Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[8]20 C.F.R. § 416.920(b) (2010).

[9]20 C.F.R. § 416.920(c) (2010).

[10]20 C.F.R. § 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[11]20 C.F.R. § 416.920(e) (2010).

past work experience, that he is capable of performing other work.[12] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[13]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[14] even if it finds that the evidence leans against the Commissioner's decision.[15]   In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a

---

[12]20 C.F.R § 416.920(g) (2010).

[13]*Muse*, 925 F.2d at 789.

[14]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[15]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

5

whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity since his alleged onset date of March 17, 2003, satisfying step one. At step two, the ALJ found that plaintiff's impairments (cirrhosis, obesity, and mild mental retardation) were severe, but he determined at step three that the impairments did not meet the stringent requirements set out in the listings,[16] specifically that the plaintiff did not establish mental retardation under Listing 12.05. Docket 8, p. 17-18.

Listing 12.05 of 20 C.F.R. Part 404, Subpart P, App. 1, states, in part:

Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .

The ALJ found that "[n]either the medical evidence of record nor testimony from claimant suggests that adaptive functioning deficits were manifested during this developmental period [before age 22]." Docket 8, p. 17. In support, the ALJ noted that the plaintiff completed

---

[16] At step three of the sequential evaluation process, plaintiff must prove by objective medical evidence that her impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that she meets each element of the listing).

6

the eleventh grade at the average age of seventeen and that he did not report or present evidence of enrollment in special education courses while in school. Docket 8, p. 17. According to plaintiff, however, even though he finished the eleventh grade,[17] he did not obtain "very good grades" and had to repeat the first grade. Docket 11, p. 8.

The plaintiff further argues that an assessment by consultative physician Dr. Powers indicated an impairment before age 22. Docket 11, p. 8. In his Psychiatric Review Technique, Dr. Powers checked the box under 12.05 Mental Retardation stating "[s]ignificantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22, with. . . [a] valid verbal, performance, or full scale IQ of 60 through 70."[18] Docket 8, p. 277. The ALJ afforded "significant" weight to the opinions which non-examining consultative physician Dr. Powers expressed in the psychiatric review technique form because they were "based on his review of the medical evidence of record and his knowledge of the disability requirements." Docket 8, p. 16. The Commissioner responds that Dr. Powers merely found that a mental RFC evaluation was necessary, from which one could infer that the plaintiff did not meet a listing (Docket 8, p. 273) and that the doctor left unchecked the box that stated that mental incapacity was evidenced by dependence upon others for personal needs. (Docket 8, p. 277). Docket 13, p. 12.

---

[17] At the hearing, the plaintiff testified that he completed the eleventh grade and did not attend special education classes. Docket 8, p. 31.

[18] Dr. Powers found plaintiff had "moderate" restrictions in activities of daily living, moderate difficulties in social functioning and in maintaining concentration, persistence or pace and that plaintiff had not had any episodes of decompensation, findings adopted by the ALJ in his RFC. Docket 8, p. 283.

Additionally, the plaintiff argues that the ALJ failed to consider evidence of previous SSI benefits. Docket 11, p. 8. Under 20 CFR 416.211(a)(1), SSI benefits are not available to residents of public institutions. According to information on the official website of the U.S. Social Security Administration, if confinement last for twelve consecutive months or longer, SSI benefits terminate and a claimant must file a new application for benefits.[19] *See* www.socialsecurity.gov/pubs /10133. Plaintiff testified that his SSI benefits were discontinued while he was in prison (Docket 8, p. 32), and the record indicates that the plaintiff was incarcerated for over a year. [20] It therefore is reasonable to assume that the plaintiff was required to file a new application for SSI benefits.[21]

Although the record does not contain evidence that the plaintiff requested review and inclusion in the record of his previous application for SSI benefits, the ALJ knew that plaintiff had been a past recipient of SSI payments. Docket 8, p. 32. An ALJ has an affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts," *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

---

[19] The official website of the U.S. Social Security Administration states:

If you are receiving SSI, your payments are suspended while you are in prison. Your payments can be reinstated in the month you are released. However, if your confinement lasts for 12 consecutive months or longer, your eligibility for SSI benefits will terminate and you must file a new application for benefits.

www.socialsecurity.gov/pubs /10133.

[20] The plaintiff's application for benefits states that he was in prison in 1998 and again from 2006 until August 11, 2008. Docket 8, p. 106-107. Additionally, the plaintiff's application revealed that he lived in an institution beginning on December 4, 2006 and he did not report another residence until August 11, 2008. Docket 8, p. 100.

[21] The Commissioner states that "it is unclear why Plaintiff did not request reinstatement." Docket 13, p.14.

This duty becomes even more important in the peculiar circumstances of this case. The Commissioner argues that the "prior information is not relevant because the relevant time period for Plaintiff's Title XVI application is August 12, 2008, his application date, through March 12, 2010, the date of the administrative law judge's decision." But a claimant who seeks SSI payments because of mental retardation must demonstrate deficits in adaptive behavior which manifested before the age of 22, making the time period of plaintiff's previous award critically important to the determination of disability in this case. The ALJ relied solely on evidence that the plaintiff attended high school through a regular curriculum, rather than a special education curriculum, to determine that those deficits were not present before plaintiff turned 22 years of age. Even though the ALJ was told that the plaintiff had received SSI benefits in the past, he neither sought to elicit further testimony on the issue, nor to obtain plaintiff's prior Social Security Administration file nor to otherwise obtain evidence relating to the prior award.

In evaluating the "paragraph C" requirements, the ALJ gave significant weight to consultative physician Dr. Drumheller's opinions because he personally evaluated the plaintiff on June 3, 2003. Docket 8, p. 15-16. Dr. Drumheller found "mild" impairment in the plaintiff's ability to interact with co-workers; "mild" impairment in his ability to receive supervision; and "poor" concentration and attention. Docket 8, p. 192. However, Dr. Drumheller also found plaintiff had a full scale IQ score of 64, which places the plaintiff's level of intellectual functioning in the mild range of mental retardation. Docket 8, p. 191.

The ALJ nevertheless concluded that the plaintiff did not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function, because the plaintiff

9

"did not put forth his best effort" in completing the test performed by Dr. Drumheller. The undersigned has reviewed the entire psychological evaluation and finds no basis for discounting the IQ score. Indeed, Dr. Drumheller reported that the plaintiff's reliability was "fair to good" (Docket 8, p. 188) and that the plaintiff "put forth his best effort during the testing session." Docket 8, p. 189.

The ALJ ignored evidence of a prior disability award that could potentially establish the criteria of the threshold requirement of Listing 12.05 – deficits in adaptive behavior prior to age 22 – and erroneously discounted the IQ score required to satisfy the "paragraph C" requirements. As a consequence, the ALJ's decision was not supported by substantial evidence and must be remanded for further proceedings.

Because this case is being remanded for further proceedings consistent with this opinion, the court need not address the merits of the plaintiff's remaining arguments at this time. A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SO ORDERED**, this, the 14th day of June, 2012.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE